Good morning, and may it please the Court, to answer your Honor's question specifically, I'd like to reserve— Your name? Oh, yes, sorry. Hans Albert Gillinger, for the Law Offices of Hans A. Gillinger, on behalf of all appellants. That's good. Stay there. Your Honor, I'd like to reserve five minutes for my colleague and two minutes for rebuttal. In this regard, my colleague will discuss claims of error related to the sufficiency of the pleadings relative to discrimination and retaliation claims in the First Amendment complaint that arise under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. While I speak to the error asserted relative to subjecting many of the claims to exhaustion under the IDEA. I imagine a good place to start is with the Supreme Court's recent decision in Frye. That case does impact the decision in this case because—and I think the Ninth Circuit was moving in the right direction in— Counsel, your time is really ticking. Could I ask you, what's the gravamen of the first count? The first two is what—that's going to be my question. Right, so they relate to discrimination and within the context of 504, that's called a free appropriate public education. Right, but isn't the gravamen of the first count you discriminated against this student by delaying his 504 plan? That's correct, Your Honor. Okay, and is the gravamen of the second that you discriminated against him by not adequately training and accommodating his autism and other disabilities? Is that a fair summary? That's fair. All right. As I was saying, the Ninth Circuit's holding in Rob versus Bethel was an injury-centered approach to examining whether the claims are subject to 1415L. We— Okay, and so pain— Pain takes care of that. Right, pain takes care of that. Pain overrules Rob. It does. But Frye—I mean, it seems to me that Frye does set a different standard than pain. That's correct, Your Honor. Under which you would have a harder road to hoe perhaps than in pain, except for the damages question, which we can talk about in a minute. Unless you're just out of the whole thing. Well, I think it—Frye clarifies that the complaint is subject to IDA exhaustion if the complaint seeks relief for the denial of faith. And that was less— Yes, but—I mean, I had the overall reaction to that opinion that they didn't really understand the groundings very well. But they—when they were saying that, what they meant, as I saw it, was anything really having to do with the educational program for a child in special education. And so the question you're raising is—I don't quite see how Frye helps you. Okay. Except that it doesn't answer two questions. One is, what about damages? And two, what about a situation in which the child has opted out of IDA? Right. And the Frye court specifically said they did not reach the question of even if the complaint does seek relief for— I know. I said that three times already. If you just would listen and answer when we're asking you, we'll get much further, much faster. Okay. Okay. Okay. So we believe that Frye's holding does not subject this case to dismissal for failure to exhaust under the IDA because the facts are materially different than that presented to the Frye court. And by this I mean that NBF was a student with disabilities but not one who is eligible for the IDA. I know. I've said that, too. All right? What I said was the two things that Frye does not deal with are a child who is not covered by IDA because her parents are opted out and money damages. All right? Let's go on from there. Okay. So the effect of that is that requiring NBF to exhaust is futile. And so this Court's decision is the holding— Well, that's the question, not the answer. Okay. Well, it seems to me that if you just took the language of the statute, of the provision about the relationship between ADA and IDA, there isn't any exception for a situation in which—it doesn't say if the child is covered by IDA. It says if you're suing under ADA or 504 in a situation in which Frye now says essentially it has to do with the education program for a child with special education needs, then you need to exhaust. But it seems as if the States don't actually provide a program for—unless you're alleging an IDA, unless you have a dual-covered child. Right. Your Honor, I think that it's implicit in the language of the statute that it covers only those students who are eligible or those who believe they've been wrongfully found ineligible. That is a claim that my client could have brought, but that isn't the type of claim that we're bringing in the First Amendment complaint. Well, but it is, isn't it? The gravamen of the First Amendment complaint, Count 1, is discrimination based upon the delayed 504. Right. So that's enforcement of rights that arise directly from Section 504 and not the IDEA. Okay. So what are those? What is it that would not be redressable in an IDEA FAPE claim that you're seeking in Count 1? What are you looking for? Well, you can't enforce 504 rights in an IDEA-only forum. I understand that, Counsel, but it's a different question. Okay. My question is you're looking for something. That's why I asked, what is the gravamen of what it is you want in Count 1? What do you want? What are you trying to get out of Count 1? Money damages? Money damages, yes. Money damages for what? For the just— The delayed 504? Which is the result of discrimination by the school district against my client. So, wait a minute, wait a minute. I got the last half of the sentence. Sure. But I don't want the first half of the sentence to be mine. Because I'm truly trying to understand what you're looking for. Count 1 talks about a finite period of time by which the 504 was delayed, right? Right. Setting aside that we don't know where the student is now or whether he's still in school, but you were just looking for a finite period of time there, and so you're looking for money damages for that under 504 for what, as a replacement? So, we're looking for money damages for that failure to the delay in developing a 504 plan at all and then a delay in implementing the 504 plan once it was set in place. What injunctive relief are you looking for, Counsel? An order requiring the school district to provide the services. Well, but that's why it's difficult. But that's why it matters to me that the complaint is a finite period of time. You're not suggesting in the complaint that the student, I mean from the complaint, I don't think we know that the student has remained in school. In fact, it reads to me as though after, I think it was March, he got the 504. Yes, Your Honor. So, you can't provide injunctive relief. I see your point as to implement accommodations double time or something like that. It's not like compensatory education. Instead, we're looking for damages to redress the services, the accommodations that ought to have been in place and were not, and for the period preceding that when the 504 plan ought to have been timely developed. But that's not injunctive relief then? No, Your Honor. No injunctive relief for Count 1? No. Okay. And then what about Count 2? The grovelman there is discrimination based upon the failure to accommodate the various disabilities. I recognize autism is not the only one, but in the interest of your time, I'll just say that. And for that claim, are you looking for money damages? Yes, Your Honor. So, as the Frey Court pointed out, the plaintiff is the master of the pleadings, and the relief that he seeks will dictate the forum to which they're subject, right? So let me, I'm looking at the language of the exhaustion provision, okay? It says, it seems to cover the situation in the sense, again, let's leave aside the money damages. The fact that the child has opted out of IDEA doesn't seem to be, if you read the language of the statute, where would you get the idea that there is not an exhaustion requirement? In the longstanding precedent of the Supreme Court. I'm not asking that. That's not what I asked you. I asked you if you'll read the statute. Because it would be futile. Well, how do we know that? I suspect you're probably right, but that may be because the states aren't doing what they're supposed to do. We know that because we demonstrated that. Well, no, you brought an IDEA claim, not an IDEA claim. If you had filed with the state agency, the ADA 504 claims that you are litigating, then we might have the answer to the question. But that isn't what you did. I don't know why you didn't do it, because I think you would have gotten the answer you wanted, but you didn't do it. And what does Your Honor believe we did? So therefore, we don't know. How do we know what the OAH would have done with that? Because the OAH said in its reasoning on that decision was that we do not have the ability to. Well, obviously they don't have the authority to litigate about the IDEA for a child who's opted out of the IDEA, but that doesn't answer the question of whether they would have had the authority to litigate about the ADA in 504 for that child. Your Honor, that was actually in the holding of the OAH. I didn't read it that way. It was that a child not eligible under the IDEA does not have the right to bring, you know, an action under the IDEA except for a failure to find eligible type claim or a dispute about providing a health care fund. So what does this rule of construction contemplate then when it says that except that before filing of a civil action under such law seeking relief that's also available under the subchapter, the procedures under F and G shall be exhausted to the same extent as would be acquired had the action been brought under this subject. So it assumes an action that is not brought under this subject, chapter. But one that implicitly was available to have been brought under that. But still... It doesn't say that. It doesn't say that. I believe it's implicit. But they're going to have to be litigating. So what are you going to do under that situation? Suppose the child was eligible under IDEA, but the claim that is being filed, they're not filing an IDEA action. They're only filing an ADA and 504 action. And this rule of construction seems to say specifically that there has to be exhaustion. So they must think that this procedure is going to litigate those claims, the ADA and 504 claim. Well, the futility exception would not be available to that child in your hypothetical. Why? It would be available to an IDEA-eligible child who nonetheless brought claims under other statutes protecting disability disabled pupils, like the 504, Section 504. What would be available? The administrative... Well, that means they have to be able to litigate ADA and 504 claims at the agency. Well, I believe you could plead the claims in your hypothetical as IDEA claims if you're... But the whole point of this language is that it's not contemplating that. It's saying that you should be exhausted to the same extent as would be required had the action been brought under the subchapter, but it's not assuming that it is being brought under the subchapter. And I think the difficulty interpreting that language is made less onerous by looking at the decision by the Supreme Court as they endeavor to resolve and clarify what that means in the context of this type of case. And I think that within the context of their examples of whether such claims could have been brought at a public... A different type of entity. Exactly. So how do you bring a claim for the delayed implementation of a 504 against a different type of entity? And that's why it's not as positive, that question, but it is helpful in most cases. And I think it's helpful to analogize the hostile work environment, which is essentially the same analogous to what we have... But it's not. They talk about infra, about if it were a ramp, if it were an access, in that sense of access, to a public swimming pool, to a library, that type of claim could be brought against a different type of institution. But I can't get my mind around the idea of bringing a delayed 504 claim against any other institution apart from a public school. Right. And if you note, the FRI court did say that the court should ask, so it's not as positive, but it's helpful to ask those two questions. And then it says if the answer is yes to those two questions, in other words, you could have brought the claim in another setting or as an adult, then it is likely that the plaintiff doesn't have to exhaust, but the FRI decision does not say the opposite. Well, it certainly suggests the opposite. Your time was almost up completely. You had 15 minutes. Okay. Do you have any other questions, Your Honor? Not now. Okay. Thank you. Mr. Fagan, I'm going to add on two minutes, and that's it. Yes, Your Honor. I'm happy to reserve that for rebuttal in the event that we've lost that time. I'll determine rebuttal later. My name is Barry Sheldon Fagan, representing all appellants, including myself, Your Honors. And with respect to some of the honors questions, the rights of a parent to unilaterally revoke consent to special education was bestowed by Congress. Actually, it wasn't. It's a regulation. And also the opportunity for ---- So you revoked. We understand. We revoked. And the stay-put right was solely bestowed upon parents as well. The school district cannot enforce stay-put. The parents have that obligation and right. Yes. And they did so in the best interest of this specific case. Of course. And so the idea that we are seeking judicial remedy when, in fact, we were seeking the path of least resistance by withdrawing from special education to not enforce a stay-put to then go back to the neighborhood school, the only neighborhood school available to Malibu students, my son, and then thereafter seeking only accommodations. So here's the problem. The problem is exactly that, I think. I don't doubt for a minute that a parent in your situation is going to be doing what's best for your son, absolutely. But the problem is Congress envisioned that there was going to be this administrative process basically so that school districts spend their money on education and trying to solve problems. But by taking the route that you've taken, if you look at a macro level rather than just one individual student, it would allow student parents to do an end run around that delayed administrative process to get to the front of the line and then to opt back in. What about that? Well, if I may, Your Honor, in fact, I am looking at the macro level. The idea that a child perhaps was designated special education but didn't necessarily need that designation, was able to stand on their own feet as opposed to being in a wheelchair, that was my son. That is most children. But, Counselor, what you did, I think, again, I don't mean to interrupt, but I think you exercised that option to opt out and then almost immediately requested a 504, right? Yes, Your Honor, in a general education mainstream environment. I got that. And so as I read Frye, the problem is if the relief you're getting at is still the same, if the gravamen is still the same of what you could have obtained under IDEA, FAPE, then there would be a requirement to exhaust, I think. And I want to give you an opportunity to respond. What am I missing in Frye? Frye actually does address that. And, in fact, their arguments with respect to their two questions are not necessarily helpful in our specific case, but the idea that parents can choose to exercise the right not to be within the jurisdiction of the IDEA. And the OAH specifically did address that. Frye doesn't discuss that. No, but the OAH did specifically address that they lack 504 jurisdiction. It is within our appellate record. It's 1 NBF 0055 to 0064. And so that question has been addressed by the OAH. But if that's true, I mean, maybe they don't understand what they're supposed to be doing. But the question is what does the statute contemplate in a situation? Let's take a situation in which you haven't revoked the IDEA. All right? But you're not trying to litigate about the IDEA. You're only trying to litigate about the – you're bringing a case only into the – you want to bring a case only into the IDEA in 504. Sure. The statute requires that you exhaust that, right? What are you exhausting? No, Your Honor. In fact, it wouldn't, because that would be a general education student like my other son who may just need extra time on a test. No, I'm not talking about that. I'm saying a child who is covered by the IDEA, but isn't what he wants to litigate about. He only wants to litigate about the ADA and 504. Right? The statute seems clear to contemplate that that child has – that there has to be exhaustion. What are they going to exhaust? If Your Honor ignores the regulation that a parent can unilaterally revoke – I'm not ignoring it. I'm simply giving you a hypothetical in which that didn't occur. Apparently, in the Frye case, it discussed how the parents or the plaintiffs are the masters of their pleading and their selection of rights. Right. I understand that. But let's take a case in which the Frye standard would require exhaustion for an ADA or before bringing an ADA or title or 504 claim. What is going to go on in that proceeding? If they did allow that, you're saying, Your Honor, hypothetically, if the IDEA allowed 504 claims? No. But the rule of construction specifically deals with somebody who wants to bring a lawsuit under the ADA, the Constitution, or Title V, and not under IDEA. And it says that you have to exhaust to the same extents as would be required to the action when brought into the subchapter. So what are you exhausting? Are you exhausting an IDEA claim that you don't want to bring? Or are you exhausting an ADA claim or a Title V claim? Well, we would take the position that there is no ability to exhaust. It would be futile. So it would be really hard to argue. Well, except the statute doesn't seem to think so because they're sending you off to do it. There is an administrative remedy for Section 504, but that's not an obligation of the parents to bring. They can then address their issues before the district court, as we chose to do. So, in fact, there is an administrative remedy for Section 504 that is non-IDEA and non-OAH. And so that is an option for parents. That could have been chosen. However, the regulations and the code does not obligate the parent to do so. We were entitled to seek relief through the district courts. And we didn't have an option, and we attempted to prove that, that we couldn't seek redress. So the idea of imposing this exhaustion for remedies, number one, for money damages that we already know are not available, and the emotional distress. Not available under the IDEA. Not available under the IDEA. And the court asks four or five months, are you seeking damages? In fact, the anxiety and the emotional distress that comes with the loss of opportunity for grades is significant. So whether it's two months, three months, five months, and if the court wishes to know, our child ultimately did not graduate from high school. The anxiety levels and the third lawsuit that was filed against the school district resulted in his anxiety preventing him, as a result of a mental relapse, from actually graduating high school. So the cause and the harm is absolute. And we did not seek this. It was our goal to bring our child back to his neighborhood school. The school decided to argue, similar as this court is, that we're not obligated to address this issue. You have to go back to this place. And they attempted to even seek that remedy against us and ultimately failed. So even when the school district, the school district, the NBF 0055 to 0064 does talk about the history of even the school district attempting to impose assessments on my son. And they couldn't do so. So neither the school district nor the parents could seek OAH remedies when they exercise a unilateral right. And we didn't exercise a right that was not bestowed upon us. Way over time. Thank you. Thank you, Your Honor. Thank you. Good morning, Your Honors. Good morning. May it please the Court. My name is Julie Mullane, and I'm representing Appellee's Santa Monica-Malibu Unified School District and Wendy Wax Gallus. We've already had quite a bit of discussion of the Frye case and its effect on the previous standard which was set forth, the relief-centered approach which was set forth within your state. Could you stand in front of the microphone and speak into the mic so we can hear you? Will do. Within Payne v. Peninsula. Within the Frye case, the question is clearly now whether we have a case that seeks denial of a fate. Does it make a difference here that they withdrew their child from IDEA? There is no such difference, Your Honor. Why not? I'm applying the specific characteristics or the specific... Under the reg, the family has the right to do that. Understood, Your Honor. And that's absolutely the case. There's no relief. Technically, there's no relief available to them under IDEA. Is that right? Well, there is, in fact. What plaintiff has attempted to do under the circumstances basically amounts to statute chopping. Well, I don't know what that means. The statute allows statute chopping. It specifically says that, and this was the reaction to Robinson, is that you can bring a case under ADA or 504. However, the IDEA specifically states that, as Your Honor noted, as a rule of construction, there is a provision in there where if you choose, if you elect to bring a claim under the ADA or Section 504 as opposed to IDEA, and a claim theoretically could have been brought under the IDEA for similar type claims, you're required to go through exhaustion. And then I'm going to ask you the same question I asked then. What is going to go on in this proceeding? I mean, it is true that the OAH here said that where the sole action of the complaint is not based on any actions of Santa Monica under the IDEA or related California law, OAH has no jurisdiction to hear the matter. So if even a child is covered by IDEA but doesn't want to bring a case under IDEA and wants to bring a case under the ADA or Title 504, what are they going to exhaust? Well, I think that particular opinion was based upon the due process complaint that was filed by a plaintiff and the motion to dismiss that was filed by the district. And that motion to dismiss was based upon the allegations set forth within the due process complaint itself, which was limited to IDEA claims. Okay, but what if they brought both? If they brought both? What if they tried to bring a, yeah, what would happen if one went to the OAH with a 504 and an ADA claim? You know, Judge Berzon keeps coming back to this, but I haven't heard anybody really tell me the answer. Then the answer under its obligations under the IDEA exhaustion requirement should be providing relief under those provisions. For example, I mean, they're saying, and our Mark H. opinion says, that there is a different FAPE requirement under the 504 regulations, which I don't understand need to be challenging. So, therefore, they could litigate for the agency the 504 FAPE requirement, not the IDEA FAPE requirement? Correct, Your Honor, correct. And have you ever seen that happen? I believe, given the propriety of a due process complaint, if it's worded correctly, that's what the administrative logic should be doing. But I have the same question Judge Berzon has, and it's a different question. I've never seen that happen. Have you ever seen it happen? I don't do administrative hearings. So that's a no? I personally don't do them, and so I'm not aware one way or the other. There's an article which says that it just doesn't happen. The states do not understand that to be their own. But, again – I don't know. We didn't find out here. You don't seem to know, and he doesn't seem to know. Well, it may be a new area of law with this Frye case coming out. I mean, I think we have the opportunity here. I don't understand it. I'm looking at the statute, which seems to contemplate something is going to go on in these cases. Correct, correct. According to the statute, according to the IDEA exhaustion requirements, I mean, the ALJ should be looking at cases that fall within the purview or that potentially could fall within the purview of IDEA. And not just to litigate the IDEA, but to litigate these other statutes. Correct, correct. To go through, not necessarily to litigate them, but to go through the administrative remedies set forth within the IDEA. Right, the 504. If somebody just brought a 504, you think the OAH would hear it or should hear it. I think given the circumstances of, well, if somebody, it depends on the type of IDEA. I mean, it depends upon the type of ADA claim that's being alleged. Yeah, the relief sought, the relief what they're seeking. Mine wasn't an ADA. If it's a 504 and it seeks relief that could be obtained pursuant to IDEA, I take it your position is that they would have to exhaust. Correct, Your Honor. And I believe the requirements under FRI would support my position. I believe going through the analysis, we're not talking about a situation where we're talking about the ability to physically access education. For example, you know, the wheelchair situation, the hearing aids. But what about count two? I've said that as to count one, it's really hard for me to imagine somebody, any other defendant having to answer for failure to provide a 504 plan in a timely manner. But what about count two? Count two is failure to accommodate the disability more broadly. Failure to accommodate autism, for example. What about that? Couldn't that type of claim be brought against a different type of public institution? Theoretically, it might under the right circumstances. But as alleged within the complaint itself, if you look at the- Failure to train. If you specifically look at the allegations, specific allegations made within the complaint and the First Amendment complaint within the- The First Amendment complaint is the operative complaint. So what allegation there is it that causes you to think that that could not be brought against a different type of entity? The problem with the Second Amendment complaint, we have kind of a unique situation here where the district court actually parsed out- Oh, I remember. I remember. Okay. Portions of the case that were considered to be subject to- that were based upon denial of FAPE and subject to the exhaustion requirement and then went forward with a number of the other ones. When it granted the motion to dismiss without leave to amend, that was as to the complaint itself, not as to the First Amendment complaint. Now, the First Amendment complaint reiterated a number of those allegations. This is the part I know, so could you get to the question, please? I'm sorry. Because your time is ticking and it's really- I understand that. I want to make sure you have a chance to respond. Okay. I'm sorry to- Did you lose the question? I did. That's what happens. Here's the question. The question is, I can understand. I'm looking at Fry and what it tells me is that I need to consider whether the gravamen of the complaint in Count 2 could a different type of entity apart from a school be held to answer for that. That's the question. Well, I think the allegations within Part 2 regarding the failure to accommodate, we're not dealing with physical accommodations here. We're all dealing with specific- Right. Educational accommodations.  So I'm trying to figure out what is it about the allegations there in Count 2 that causes you to think that it really would only have to be a school district that would- Well, because the allegations include things like I need more time to do my homework. I need time to- additional time for testing. I need time for, you know, these- Right. But it's also true, as I understand it, that this child is not in school. And we're not talking about injunctive relief. We're only talking about damage. Yeah. So what do we do with damages? I'm not sure what to do at this point with the damage issue. I mean, again, we're dealing with a situation where the exhaustion of administrative remedies should have been done prior to the filing of the incident complaint. That's the requirement set forth within the IDEA. And at that point in time, there would have been absolutely adequate remedies in place to deal with the situation. Well, at that point in time, the time had already passed now. In other words- It's a finite period of time, and it was over. And there was already a time gap, right? So there was already a damages claim for a period that wasn't- wouldn't have been covered by any prospective relief. Well, but theoretically, this student was still in school at that point. And, I mean, we're dealing with a- you're asking me about- It might have resolved the damages claim. Exactly, exactly. No, I don't- I don't understand what you're saying. The ALJ could have basically dealt with the situation. I mean, in going through the process, it's not just an ultimate determination of the ALJ. There's the process that necessarily it has to go through, including mediation. So your position is that they could have gone to the ALJ- I mean, the question is I don't know how to prove this off, whether they could have or couldn't have. Your position is that they could have gone to the ALJ and said, even though we've opted out of the IDEA, we're not covered by the IDEA, and we can't bring and aren't bringing any claims under the IDEA, we are claiming that under the ADA and Title- and 504, we should get more time for homework, and we should have special rules about discipline, and we should have- I don't know if they were looking for an aid or what they were looking for, but- and that the OAH would have litigated that, even though the child was, A, not covered by the IDEA, and, B, was only seeking- it was relief that might have been available, some of it under the IDEA was covered, but they were doing it under different standards under a different statute. I believe that's what the ALJ needs to do under the standard of FRI. The case itself meets the requirements set forth within FRI. All of the answers to the questions, given the procedural history of the case, given the hypothetical, the two components of the hypothetical presented by FRI, given those circumstances, it was an obligation to go through. Well, let's suppose that- because I bet this is the case, that OAH doesn't think so. I mean, they could be wrong, but suppose that OAH's position, and it appears to be from this rule, that if you're not under the IDEA, or if you're not litigating an IDEA issue, we have nothing to do with you. Well, I think if the issue is presented properly within a due process complaint, there would not be any sort of jurisdictional issue that would have been brought up by the district, for example. There wouldn't have been a motion to dismiss during the course of discussions with the ALJ. I just need you to be more specific so I can follow you. Is the issue meaning if they had included a 504 or an ADA? I'm sorry, what was the question again? When you said if the issue had been properly brought up, what issue are you talking about? If they had really brought a 504 and said they were opting out of the IDEA when they went to the OAH, is that what you're asking? Basically, given the circumstances of this case, presenting that within a due process complaint. Right, okay. Correct. If they had done that, then the answer is? That the ALJ should have taken the matter, I mean the district would not have brought a motion to dismiss at that point and the jurisdictional issue would not have been an issue, the jurisdictional issue would have been discussed with the ALJ and dealt with at that point. Do you want to address the retaliation claims? Regarding the retaliation claim, I believe after the exhaustion portion of the claim, the court actually went on to address all three of the factual predicates that were set forth within the First Amendment complaint, finding that any allegations regarding the OCR filing, etc. and so forth, did not have any causal connection between any sort of protective activity and any action that was taken by the district. In other words, the causation element was absent. I'm not sure what more I can add to... Can you just stand by what the district court said? Exactly. I can go into a little more detail as far as the absence of any causal connection between the water polo incident, the multiple suspensions, Galas' reporting. I think it is noteworthy to identify the fact that Plaintiff did, in fact, because he was taken out of the IDEA, consent for that was revoked. He didn't have the disciplinary protections under the IDEA, so it's no surprise that the kid who had behavioral issues before and a number of suspensions before is going to have a number of suspensions thereafter, given the inapplicability of the IDEA protections. As far as Galas' reporting, I've already indicated in the brief that she's a mandated reporter. She, under the circumstances, did what was reasonable, and there was no indication of any causal connection that that was related to Plaintiff having filed any... or his parents having filed any sort of OCR complaint or any other sort of activity that might be considered protected under the ADA or Section 504. Okay, thank you. Thank you very much. Okay, one of you. I'll give you a minute. Thank you, Your Honor, and I just want to follow up on the line of questioning regarding the ability of a hearing officer to have the subject matter jurisdiction of the hearing officer. It is constrained by two parts of 20 U.S.C. 1415. In the first, it confers the right of a parent of a child with a disability to bring a claim arising under this part, this part being the IDEA, and a hearing officer has the... What are you reading from now? I believe that's 1415 B or C, and then the next one I'm talking about is J, which is the authority of the hearing officer to hear and decide any claims brought under this part, and then it speaks to the ability of the district court to review those claims. So it expressly limits, by reading those two subparts together... It was J, and what was the other one? B or C. Yes, it's towards the beginning, B or C. One of them talks about the right of the parent, the B or C one talks about the right of the parent, and the J speaks to the constraints on what the hearing officer may hear and decide. Counsel, could you just tell me, is there anything that these parties seek pursuant to ADA or 504 that they could not have obtained through IDEA? Yes, we couldn't have obtained money damages for emotional distress, these types of things, and for... What about the educational-related issues? Okay, well, educational-related issues, the Fry Court cautions courts to not conflate educational in nature with relief for the dial of faith, not everything educational. Right, so that's why I'm asking the question. Right, okay. Is there anything that, apart from I understand you've got this emotional distress issue, that's a different issue, but is there anything that these guys sought pursuant to Count 1 or Count 2 that could not have been obtained pursuant to IDEA? Redress for the delay in providing accommodations because you can't do compensatory education. That's damages. Right, but I'm saying that you can't provide accommodations double time to make up for a failure to provide it during, you know, a period of time in which you're entitled to it. The only way to redress that is through compensatory damages. And your position is that that wouldn't have been available to you under IDEA? Absolutely, because the money damages are not available. Just one question, if I might, on the retaliation claims. Is the protected activity the filing of the Superior Court complaint? Yes, and it's the continued advocacy, the right to advocate for the rights of a disabled child. Although quite annoying, I'm sure, it doesn't invite the retributive actions that were taken. You've answered my question. Okay, thank you, Your Honor. Thank you. That's it. Matter submitted. Thank you, counsel. Interesting case.
judges: Paez, Berzon, Christen